**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| In re:<br><br>**IN RE: KEYBANK CUSTOMER DATA SECURITY BREACH LITIGATION** | MDL Docket No. 3056 |
| --- | --- |

**PLAINTIFFS MELISSA URCIUOLI, JAMES URCIUOLI, JOSEPH TUROWSKI, JR., AND TERESA TUROWSKI'S RESPONSE IN PARTIAL SUPPORT OF PLAINTIFFS KAREN MARTIN AND MICHAEL MARTIN'S MOTION FOR TRANSFER AND CENTRALIZATION IN THE WESTERN DISTRICT OF PENNSYVLANIA PURSUANT TO 28 U.S.C. §1407**

## INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and J.P.M.L. Rule 6.2, Respondents Melissa Urciuoli, James Urciuoli, Joseph Turowski, Jr., and Teresa Turowski (collectively, the "*Urciuoli* Respondents"), Plaintiffs in *Urciuoli, et al. v. KeyBank National Association, et al.*, Case No. 1:22-cv-01598 (N.D. Ohio) (Oliver, *J.*), hereby submit their response in partial support of Plaintiffs Karen Martin and Michael Martin's ("Movants") Motion for Transfer and Centralization in the Western District of Pennsylvania Pursuant to 28 U.S.C. §1407 (the "Motion"). ECF No. 1.

While the *Urciuoli* Respondents support transfer for coordinated or consolidated pretrial proceedings of all pending actions noted in the Motion, as well as the one related action filed after the Movants' Motion (collectively, the "Related Actions"), the *Urciuoli* Respondents respectfully request this Court transfer the seven Related Actions filed against Defendants KeyBank National Association ("KeyBank"), KeyCorp (together with KeyBank, "Key"), and Overby-Seawell Company ("OSC") (collectively, the "Defendants"), and any and all subsequently-filed Related Actions, or cases filed involving similar facts or claims, to the U.S. District Court for the Northern District of Ohio before Judge Charles Esque Fleming.

## BACKGROUND

There are seven Related Actions pending in three different federal district courts—two are pending in the Northern District of Ohio, [1] three are pending in the Northern District of Georgia,[2] and two are pending in the Western District of Pennsylvania.[3] Prior to filing their Motion, the *Urciuoli* Respondents' counsel conferred with counsel to the plaintiff parties in the Related

---

[1] *See Bozin, et al. v. KeyBank, N.A., et al.*, Case No. 1:22-cv-01536 (N.D. Ohio) (Fleming, *J.*); and ***Urciuoli, et al. v. KeyBank National Association, et al.*, Case No. 1:22-cv-01598 (N.D. Ohio) (Oliver, *J.*)**.
[2] *See Samsel v. Overby-Seawell Company, et al.*, Case No. 1:22-cv-03593 (N.D. Ga.) (Grimberg, *J.*); *Marlowe v. Overby-Seawell Company, et al.*, Case No. 1:22-cv-03648 (N.D. Ga.) (Grimberg, *J.*); and *Archer, et al. v. Overby-Seawell Co., et al.*, Case No. 1:22-cv-03780 (N.D. Ga.) (Grimberg, *J.*).
[3] *See Martin, et al. v. KeyBank National Association, et al.*, Case No. 2:22-cv-01346 (W.D. Pa.) (Colville, *J.*); and *Pittman v. KeyBank National Association, et al.*, Case No. 2:22-cv-01513 (W.D. Pa.) (Colville, *J.*).

Actions to discuss whether alternatives to centralization, including seeking 28 U.S.C. § 1404 transfer to one district court could be accomplished. Unfortunately, these efforts were unsuccessful.

The *Urciuoli* Respondents join the *Bozin* Plaintiffs' request that this Court consolidate and transfer all matters to the U.S. District Court for the Northern District of Ohio before Judge Charles Esque Fleming.

## **LEGAL STANDARD**

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Specifically, 28 U.S.C. § 1407(a) permits transfer and consolidation or coordination of cases that meet three requirements: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a).

"The purpose of Section 1407…is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinat[ing] district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 490-92 (J.P.M.L. 1968). Centralization is designed to "eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary." *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006).

Pretrial transfer under Section 1407 is appropriate and necessary here. The Related Actions involve nearly identical facts, common corporate Defendants, and overlapping proposed classes. The Related Actions are also in their early stages. There have been no rulings on any dispositive motions, nor has any discovery taken place. Centralization of these Actions at this early stage will allow the transferee court to efficiently resolve the common factual and legal issues and address overlapping discovery related to these issues.

## ARGUMENT

### I.   The Related Actions Should Be Consolidated Under 28 U.S.C. § 1407

Since the action was filed against Defendants in the Northern District of Ohio in August of 2022, six additional Related Actions have been filed. Pretrial transfer and consolidation under 28 U.S.C. § 1407 is appropriate and necessary here. The Related Actions all involve similar factual allegations and legal standards. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters.

### A.  The Litigation Involves Common Questions of Fact

In assessing the appropriateness of consolidation under Section 1407, the J.P.M.L. looks to the pleadings to determine the extent to which common questions of fact are present. The complaints in these Related Actions clearly present common questions of fact. Each complaint is based on the allegations that Defendants exposed plaintiffs' and purported class members' PII in a cyberattack.

Further, each of the constituent Related Actions will require adjudication of whether Defendants violated state deceptive trade practice statutes and/or the common law through its alleged misconduct. Adjudicating these common issues in a single transferee district will benefit

the parties and witnesses and promote judicial efficiency by allowing a single court to coordinate pretrial proceedings governing these common legal and factual issues.

The J.P.M.L. has routinely granted consolidation motions in similar data breaches as pointed out by the Movants in their brief at 5-6. ECF No. 1-1. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) (same); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) (same); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) (same). It should do the same here.

### B. Transfer for Consolidated Pretrial Proceedings Would Serve the Convenience of the Parties and the Court, Promote Judicial Efficiency, and Avoid Duplication of Resources

#### 1. The Parties Face Duplicative Discovery Absent Transfer and Consolidation

"The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION, §20.131, at 220 (4th ed. 2004). Because the allegations of all the Related Actions are substantially similar and derive from the same common Data Breach, and because they all turn on the same factual questions, namely whether Defendants' policies allowed for the expose to their PII, the parties face duplicative discovery if the cases are not transferred and consolidated. This is an important consideration for the J.P.M.L. in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day to-day contact with all aspects of the litigation, will be in the best position to

design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Res. Expl., Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). The parties in these Related Actions will necessarily engage in duplicative discovery given the overlap in facts and legal issues. All plaintiffs will be seeking the same documentation and data from Defendants and will likely request to depose the same witnesses. Defendants will raise the same class certification objections and discovery objections, seek the same protective orders, and assert the same privileges in each case. However, if the J.P.M.L. transfers and consolidates the cases, the parties will coordinate their efforts and thus save all parties – and the Court – time and money.

### 2.   Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings

The J.P.M.L. considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the complaints, and the likelihood that future filed actions will contain the same, the possibility of inconsistent rulings on pretrial motions is substantially increased. *See In re Airline Baggage Fee Antitrust Litig.*, 655 F. Supp. 2d 1362, 1363 (J.P.M.L. 2009) ("In light of the very large number of individuals affected by the fees in question, the possibility of additional actions arising in other districts (with ensuing duplicative Section 1404(a) motion practice) looms."). Defendants are likely to present the same pretrial motions in each action and assert the same discovery objections and privileges. As an example, the *Urciuoli* Respondents anticipate that Defendants will file motions to dismiss their complaint on many of the same grounds raised in each of the six other cases arising out of the same data

breach. Inconsistent rulings on those dispositive motions would pose a serious problem, in that the Related Actions seek to certify overlapping classes. In addition, because of the similarity in the allegations, Defendants will likely assert the same defenses in opposition to plaintiffs' claims, most notably that it exposed customers' PII, creating a real risk of inconsistent pretrial rulings. In light of this risk, it would be in the best interests of all involved – the parties, the witnesses and the courts – to transfer and centralize these Related Actions.

### C. There is a Sufficient Number of Actions to Support Transfer and Consolidation

As stated above, there are currently seven Related Actions pending in federal court and the *Urciuoli* Respondents believe that many more will follow. The J.P.M.L. has routinely ordered centralization of three or fewer cases. *See, e.g., In re Wireless Tel. Replacement Prot. Programs Litig.*, 180 F. Supp. 2d 1381, 1383 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Pracs. Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Pat. & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer of three cases involving patent and antitrust issues); *In re Alodex Corp. Sec. Litig.*, 380 F. Supp. 790, 791 (J.P.M.L. 1974) (granting transfer of three securities actions).

Given the number of current and likely tag-along actions related to Defendants' systematic, widespread activities, transfer and consolidation is appropriate.

6

**II.     The Northern District of Ohio is the Most Appropriate Transferee Forum**

Two of the seven Related Actions, including the first-filed action, are pending in the Northern District of Ohio. Here, the Northern District of Ohio is the most appropriate venue for transferring the Related Actions for numerous reasons articulated below.

*First*, Defendant KeyBank is headquartered in and has substantially all of its operations in this District, in Cleveland, Ohio. Additionally, the first-filed action was also filed in this District. Importantly, it was Key's underlying customer data which was exfiltrated as part of the Data Breach, not OSC's, as OSC acted as Key's vendor. *See* August 26, 2022 KeyBank Notice Letter ("On August 4, 2022, we were contacted by Overby-Seawell Company (OSC), ***regarding a cybersecurity incident affecting KeyBank clients***. OSC is a vendor that provides KeyBank ongoing verification that our residential mortgage clients are maintaining property insurance. OSC informed us that an unauthorized ***external party had*** gained remote access to their network and on July 5, 2022 ***acquired certain information from a number of OSC clients, including certain personal information of Key Bank clients.***") (emphasis added). This Notice Letter was sent to KeyBank customers on KeyBank's letterhead, not OSC's. Accordingly, relevant witnesses and documents will likely be found in the Northern District of Ohio, where KeyBank, its systems, and employees reside. *See, e.g., In re Gen. Tire & Rubber Co. Sec. Litig.*, 429 F. Supp. 1032, 1034 (J.P.M.L. 1977) (transferring to the Northern District of Ohio as it was "the most appropriate transferee forum for this litigation. Since the headquarters of [defendant] General Tire is within that district, many of the relevant documents and witnesses, insofar as they are located in the United States, will be found there"); *In re Welding Rod Prod. Liab. Litig.*, 269 F. Supp. 2d 1365, 1367 (J.P.M.L. 2003) (transferring to the Northern District of Ohio as "the corporate headquarters for several of the defendants are located within this district, meaning

relevant witnesses and documents will likely be found there."); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) (transferring to the Northern District of Ohio which had "a strong factual connection to this litigation", and one of the major defendants "[wa]s based in Ohio."). Additionally, the first filed Action (the *Bozin* Action) was filed in the Northern District of Ohio, which also supports transfer. *See In re: Saturn L-Series Timing Chain Prod. Liab. Litig.*, 536 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (the district was an "an appropriate transferee district for pretrial proceedings in this litigation, because the first-filed action was brought there").

The Northern District of Georgia does not have anywhere near as strong a connection to the facts and claims asserted in this action. Indeed, other than being the district for OSC, KeyBank's vendor's location, it has no nexus to the underlying facts of the litigation at all.  The Western District of Pennsylvania's connection to the action is even more tenuous as it cannot even claim one of the corporate defendants is headquartered there.

*Second*, the current caseload and efficiency in the Northern District of Ohio also counsels in favor of centralization there. Recent federal statistics confirm that the Northern District of Ohio is an efficient jurisdiction capable of ensuring timely resolution of these Actions.[4] As of June 30, 2022, the median time from "filing to trial" in civil cases is 36.2 months in the Northern District of Ohio, as compared to 39.1 in the Northern District of Georgia, and 42.9 months in the Western District of Pennsylvania.[5] The importance of the median time from "filing to trial" in the district

---

[4] *United States District Courts* – U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2022), *available at* https://www.uscourts.gov/file/45245/download.
[5] *Id.*

courts has previously been recognized by the J.P.M.L. as an important consideration for transfer.[6] *See, e.g., In re Nat. Student Mktg. Litig.*, 368 F. Supp. 1311, 1318 (J.P.M.L. 1972) (transferring to the District of Columbia when "[e]ven more significantly, the ***median time interval from issue to trial in civil cases*** was eighteen months in the District of Columbia but twenty-seven months in the Southern District of New York.") (emphasis added); *In re Veeco Instruments Inc. Sec. Litig.*, 387 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005) ("The Southern District of New York i) contains the first-filed action; and ii) has more favorable caseload statistics than the Eastern District of New York."); *In re Xyberbaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (transferring to a district that "has relatively favorable caseload statistics."). As of June 30, 2022, the Northern District of Ohio had slightly more total case filings (3,969), compared to the Western District of Pennsylvania (3,707), and far less than the Northern District of Georgia (7,085).[7] Further, as of June 30, 2022, the Northern District of Ohio has 219 civil actions per judgeship, the Northern District of Georgia had 564 civil actions per judgeship, and the Western District of Pennsylvania had 298 civil actions per judgeship.[8] The difference between the Northern District of Ohio and Northern District of Georgia is telling: while both districts have eleven judges as of June 30, 2022, the Northern District of Georgia is handling more than 157.53% more civil actions,

---

[6] While statistics generally favor the Northern District of Ohio as the most appropriate transferee forum, the only statistical category that Movants argue (ECF No. 1 at 12-14) favors the Western District of Pennsylvania is the median time in months from "filing to disposition," ("the following tables sets forth the number of filings, the median time from filing to disposition, and median time from filing to trial:… Docket conditions thus favor the Western District of Pennsylvania as a more suitable location for transfer."). However, the median time (in months) from filing to disposition is 6.8 months in the Western District of Pennsylvania, when compared 9.8 months in the Northern District of Ohio, and 5 months in the Northern District of Georgia. *See United States District Courts* – U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, *supra*.

[7] *United States District Courts* – U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics.

[8] *Id.*

making the Northern District of Ohio a much less congested docket and appropriate transferee forum.[9]

     *Third*, the Norther District of Ohio has the resources to handle this MDL. As of October 14, 2022, the Northern District of Ohio has three pending MDL's, the Northern District of Georgia has three, and the Western District of Pennsylvania has five.[10] Thus the Northern District of Ohio is not overtaxed with other MDL cases. Further, the Northern District of Ohio has extensive experience in handling MDLs, including the pending Opioid MDL, *In Re: National Prescription Opiate Litig.*, MDL No. 2804, which is one of the largest and most complex in history, as well as a current data breach MDL, *In re: Sonic Corp. Customer Date Breach Litig.*, MDL No. 2807. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2022 WL 9990022 (N.D. Ohio Oct. 17, 2022) (Gwin, *J.*) (granting final approval to a data breach settlement for a class of financial institutions); *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-MD-02807-JSG, 2020 WL 6701992, at *1 (N.D. Ohio Nov. 13, 2020) (Gwin, *J.*), *leave to appeal denied sub nom. In re Sonic Corp.*, No. 20-0305, 2021 WL 6694843 (6th Cir. Aug. 24, 2021) (certifying litigation class of financial institutions in data breach case); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *1 (N.D. Ohio Aug. 12, 2019) (Gwin, *J.*) (granting final approval to a data breach settlement for a class of consumers). Further, the Sixth Circuit Court of Appeals, encompassing the Northern District of Ohio, has significant experience handling data breach litigation. *See, e.g., Galaria v. Nationwide Mutual Insurance Co.*, 663 Fed. Appx. 384, 385, 388 (6th Cir. 2016) (addressing standing in a data breach case); *In re Sonic Corp.*, No. 20-0305, 2021 WL 6694843, at *4 (6th Cir. Aug. 24, 2021) (affirming the district

---

[9] *Id.*
[10] J.P.M.L. – Pending MDLs by District as of October 14, 2022, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-14-2022.pdf.

court's certification of a litigation class of financial institutions in a data breach case and denying interlocutory appeal). Further, Judge Charles Esque Fleming, who is recently appointed, and assigned to the *Bozin* Action, has the capacity to take on the significant additional work of an MDL.

*Fourth*, in terms of geography and convenience, the Northern District of Ohio, specifically the Cleveland metropolis, is situated as a convenient and accessible transferee forum. Cleveland Hopkins International Airport offers non-stop flights to Atlanta's Hartsfield-Jackson Atlanta International Airport,[11] New York – JFK airport,[12] New York – LaGuardia airport,[13] Newark Liberty International Airport,[14] and Tampa International Airport[15]—cities where counsel for plaintiffs[16] and defendants[17] are located.[18]

Thus, not only is the Northern District of Ohio the most appropriate transferee forum, but the Northern District of Ohio also has the resources and capacity to properly oversee this litigation, and the J.P.M.L. should transfer the Related Actions to this District.

---

[11] https://www.clevelandairport.com/atlanta.

[12] https://www.clevelandairport.com/flight-information/non-stop-cities/new-york-jfk.

[13] https://www.clevelandairport.com/flight-information/non-stop-cities/new-york-lga.

[14] https://www.clevelandairport.com/flight-information/non-stop-cities/newark.

[15] https://www.clevelandairport.com/flight-information/non-stop-cities/tampa.

[16] According to their respective Notices of Appearance, counsel for the *Martin* and *Pittman* Actions is located in New York City (ECF Nos. 4, 20); counsel for the *Bozin* Action, which supports transfer to the Northern District of Ohio, is located in metro-Cleveland, in Lakewood, Ohio (ECF Nos. 6, 7); counsel for the *Urciuoli* Action is located in metro-New York City, in White Plains, New York (ECF No. 14); counsel for the *Samsel* Action is located in Columbus, Ohio (an approx. two and a half hour drive to the Cleveland federal courthouse) (ECF Nos. 15, 19, 21); counsel for the *Marlowe* Action is located in Tampa, Florida (ECF No. 17); counsel for *Archer* Action is located in Cincinnati, Ohio (an approx. three and a half hour drive to the Cleveland federal courthouse) (ECF No. 18).

[17] According to their respective Notices of Appearance, counsel for Defendants KeyBank, N.A. and KeyCorp are located in New York City (ECF No. 9), and counsel for Defendant Overby-Seawell Company are located in New York City (ECF No. 11).

[18] To the extent corporate parties from Defendant OSC (based in Kennesaw, Georgia, north of Atlanta) have to travel to Cleveland, Cleveland Hopkins International Airport offers non-stop flights to Atlanta's Hartsfield-Jackson Atlanta International Airport (*see* above).

## CONCLUSION

Based on the forgoing, Movants' Motion should be partially granted, and the Related Actions, as well as any subsequently filed actions containing similar allegations, should be transferred to the Northern District of Ohio before Judge Charles Esque Fleming.

Dated: November 8, 2022

Respectfully submitted,

*/s/ Christian Levis*
Christian Levis
Amanda G. Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
Email: achristina@lowey.com

Gary F. Lynch
Jamisen A. Etzel
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Email: gary@lcllp.com
Email: jamisen@lcllp.com

James A. Francis
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street
Suite 2510
Philadelphia, PA 19103
Telephone: (215) 735-8600
jfrancis@consumerlawfirm.com

Robert P. Cocco

**ROBERT P. COCCO, P.C.**
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Telephone: (215) 351-0200
Email: bob.cocco@phillyconsumerlaw.com

*Counsel for Plaintiffs/Respondents Melissa*
*Urciuoli, James Urciuoli, Joseph Turowski, Jr., and*
*Teresa Turowski*